Good afternoon and may it please the court. Gregory Keenan of the Digital Justice Foundation appearing on behalf of Appellant Richard Bell. The legal error below was the application of a de minimis defense that conflicted with Ninth Circuit jurisprudence. Mr. Keenan, did you receive the letter from the panel? Yes, Your Honor. Can you start by addressing whether your client has a copyright interest in the photograph? Of course, Your Honor. So I received the message regarding the concerns surrounding the Carman case and the Davis case. My understanding, after doing some preliminary research into it, our belief is that the collateral estoppel and issue preclusion would not be an application here because the decisions below predate the decision in Carman. So that would distinguish it from Davis. What about whether there was a jury finding that your client doesn't actually have a copyright interest in the photograph because he was not the author? Yes, Your Honor. So there's two responses to that. The first is just about retroactive effects of issue preclusion. And I'd like to read a quote if I may from a case called Nationwide by the Ninth Circuit. It says, we addressed a similar argument in Orientire. In Orientire, the appellee argued that the appeal was barred by claim preclusion based upon a judgment post-stating the judgment on appeal. We rejected that position, noting a fundamental difference between preclusive effect of a district court judgment upon a future action and the effect upon an action that predates a relevant judgment. Although a district court judgment carries preclusive effect going forward, it cannot operate to bar direct review of an extant judgment. That doesn't really answer the practical problem, which is that you're asking us to send it back to the district court. And at that moment, it appears this issue would be teed up. So would we be wasting our time if we sent it back for an issue that's been teed up under the future client's claim? I understand the concern and certainly the pragmatic effects. Regarding that, I would have two responses. The first is that in Davis, there was an appeal filed regarding the preclusive effects. And that appeal has stayed pending post-trial motions at Carmen and the intention to file an appeal subsequently. So the Ninth Circuit's already taken a wait-and-see approach in Davis on appeal. So if there's concerns that there might be kind of a futility in sending it back to the district court, a wait-and-see approach, pending resolution of those post-trial motions and the appeal might be the pragmatic thing to do. So what is the status of the ownership of this copyright? I know you do have in the record a copyright registration in the name of Rich Bell, which does not indicate that it's a work for hire. But as I understand it, the jury verdict in the Carmen case was that it was a work for hire and that he did not own the copyright. So what is the situation with respect to copyright ownership? Yes, Your Honor. Our position is that our client holds the copyright. And I would point to a case from the Southern District of Indiana that's already ruled to that effect called Maloney that came out before Carmen that directly addressed at a bench trial a work made for hire defense. And it held that, one, the defendant there actually did not have standing to assert the work made for hire defense under a third-party rule. It was interpreting this court's Jules decision. Additionally, that said that a third party doesn't have standing to assert that defense. And it said even if there were standing, it was clear that there was no dispute as to ownership because the company that allegedly owns the work made for hire didn't believe that it had a copyright interest. So that Maloney case addressed this issue. So one of the really complicating wrinkles is that on this issue of preclusion, the issue has been decided in conflicting ways. We believe that jury trial, that jury verdict is an error because what it ultimately comes down to saying is that a law partner, as part of his scope of employment, was a photographer. It doesn't really kind of comport with the work made for hire doctrine as I understand it. And Maloney had already weighed in on this issue and said that the work made for hire issue is not a viable defense. Why didn't you mention the other cases in the statement of related cases when you filed this case? I don't believe that we thought that it was a related case because I suppose the copyright was the same work, but the parties were distinct. So we didn't file it as a related case for that reason. But you filed a motion to stay in the Ninth Circuit based on the Carmen case. Oh, sorry. You didn't, but your client did. I'm sorry.  Your client's counsel in that case filed a motion for a stay based on the jury finding. Yes, Your Honor. I guess one of the complicating factors is I only represent Mr. Bell on this particular matter for this particular appeal. Our organization took an interest in the case because of this amendment's rule, which we thought would have very outsized negative impacts on independent creators all around the country. And so that's why we found the case and took on the appeal, because we think it's a matter of great public interest that this de minimis decision be reversed. I've got to tell you, as long as we're a little bit on a tangent, and I know you want to get to the important issues, and I'm sure you'll have time to do it. But as it happens, I lived in Indianapolis when I was young, and I spent a lot of time looking at this picture. In Indianapolis, this picture is, we are told, taken in March of 2000. Indianapolis doesn't look like this in March. This picture is filled with trees with lots of leaves. I can assure you that's not Indianapolis in March. So I began to scratch my head and wonder what this was about. Now, I didn't investigate and hadn't come to learn about the other lawsuit until just recently. But I got a lot of questions about what's being submitted here, and I'll pile on. It seems to me that you're getting the message that courts don't much like this case. And the reasons they don't much like this case may not have to do with the grounds cited by the district court here. But I got to tell you, I don't much like this case either. It seems to me it's an exercise in extortion. So that's what you're facing. And ultimately, your client ought to realize that sometimes you cut your losses, and this might be one of those times. Yes, Your Honor. So can I speak to each of those issues just distinctly because it's kind of a bifurcated question. The first is a question about Indiana in March. So the photo was registered with the Copyright Office 11 years after it was taken. My understanding is the Davis court weighed into this, and I just found out about these two cases when Chambers issued its order. So I am playing catch up, and I'm doing my best. So we are more than happy to weigh in with supplemental briefing when we've had time to sort it out. But in the Davis case, they raised a similar concern about whether it was taken in March. Our client said that he may have misremembered that it may have been May. That is how he described the discrepancy. Ultimately, it was essentially something that happened 10 years ago, and he may have misremembered the date. I think that's a fairly innocuous explanation, but I do appreciate you bringing the concern about this type of case to the forefront. I can assure you that as a public interest attorney who represents independent artists all around the country, I would not have gotten involved in this appeal if this was some sort of strike suit or extortion. One of the things that is jarring undeniably is that there are 200 or more than 100 copyright claims here, and very often there's a knee-jerk instinct to think that that is somehow the fault of a plaintiff. Sometimes it is, and sometimes it's not. Actually, the difficult part is that courts can take a one-size approach to this, and it's really not a one-size approach because there are, for every person filing a small copyright claim, that seems too frivolous for the court's time. I assure you there are 10 independent artists who are not, and the problem is in the digital ecosystem, the Internet is great for independent creators because it gives them unprecedented access, but it creates a very bizarre situation where there are disaggregated harms. If this was one claim with $200,000 in damages, no one would bat an eye at it. If essentially you have 200 claims alleging $1,000, it seems odd to courts, and I understand that federal courts do not want to be dealing with this, but it's the only place that plaintiffs can go under the Copyright Act. Congress is currently trying to deal with that. Five years ago, they attempted to do something called the Fairness for Small Artists or Small Creators Act. That didn't go anywhere. Currently, there's the CASE Act. What they're trying to do is, because independent creators have these disaggregated claims, they want to empower the Copyright Office to create something of an alternative small claims court, but until Congress does that, this is the only avenue for people to go. I understand that some people may be more litigious than others, but when the court says they're minimus, it affects genuinely all types of independent creators, ones who have real problems with access to law, ones who cannot pay their bills, because even if it's 200 disaggregated $1,000 claims, it's death by 1,000 paper cuts. I can tell you personally that my clients in these cases very often cannot pay, forget my legal bills, their own grocery bills, and so they're kind of in an impossible situation because the only place they can turn is federal court, and they have viable claims, but of course, federal courts react with an incompletely understandable hostility to these claims because they seem like a federal lawsuit over the most insignificant thing, but I promise you in the aggregate, it is a serious concern to tons of independent creators, and so I really hope personally that Congress amends this, but the reason that we got involved as the Digital Justice Foundation in this appeal, as opposed to letting the losses be cut, is that the minimus decision will wreak havoc on these independent creators, and this case affects much more than just Mr. Bell, so there are ways that courts can deal with this problem if they want to, so actually the Maloney case is an interesting one because there it was a default judgment, but the judge ruled it was innocent infringement awarded $200 and no attorney's fees. If courts essentially saw this as a solution at the back end, dealing with remedies as opposed to the front end with liability, it would go a long way to signaling to attorneys, there's no meat on the bones here. Don't come rushing into court for a big payday. The federal judiciary is not a lottery system, but it would also allow independent creators to come forward and actually exercise their rights that they have under section 106, so I think the solution, if courts are struggling with this, is to encourage parties to agree that there is liability where there is liability, and then use its powers in the provisions of the Copyright Act, dealing with remedies, to allow for innocent infringement, which brings down the statutory damages to $200. There's broad discretion in attorney's fees, and it's important that the Supreme Court has weighed in twice on this to say that attorney's fees are not awarded as a matter of course to the prevailing party, and this is precisely why, because the copyright ecosystem affects starving artists to huge conglomerates, and so the point is... This may be one of those cases where the court will bring the curtain down at the end, and I think it should, but in the meantime, people have spent many hours and thousands of dollars of attorney and court time, so that the district court decided to get the message out sooner rather than later may not be a bad thing. Now, you may not like the vehicle used by the district court, but the message should still be there to Mr. Bell that there's not a pot of gold at the end of this rainbow. I don't disagree with the very genuine concern that the court has, but I do think that it's very tempting to have a knee-jerk, one-size-fits-all response, and it affects, I promise you, artists all throughout the country, that the judiciary is seeing one very focused phenomenon in this very complicated system, and Congress is attempting to deal with it, and public interest groups are trying to essentially push that along to alleviate the judiciary of this burden, but there are other routes that courts can go instead of fabricating a de minimis defense. There's already ample affirmative defenses in the Copyright Act. There's fair use provisions that give people flexibility to essentially respond to the over-breath of copyright. It's just important to correct the error that there is no de minimis defense. It's incompatible with the Copyright Act, and it will disproportionately affect the smallest artists who are currently struggling with access to law to begin with, and they have codified rights and exclusive rights in their intellectual property under a statute passed by Congress. But don't we only get to fair use and de minimis arguments if your client has a valid copyright? Yes, Your Honor, and the argument that we would have is that because the Karman decision, while valid, and certainly having preclusive effects moving forward, it can't operate retroactively on a decision on appeal that was decided beforehand. So is your client pursuing the hundreds of cases that post-state the Karman decision? Is he dropping those lawsuits, or is he still pursuing those? I personally don't know what he is doing in those other matters. To be honest, I'm just playing catch-up on this. I have not had time to do a deep dive into the legal ramifications or to consult with the client on this. I wanted to best prepare myself to apprise the court of my understanding of the law. But it does appear that the preclusive effect does not operate retroactively, is my understanding. And so because Karman post-states this, and not because, but as a kind of ancillary just consideration, is the Maloney decision already ruled on this beforehand, too. So if you do have issue preclusion, it goes both ways. There's conflicting rules here, and I think anyone who is familiar with the Work Made for Hire doctrine would find the jury holding, while it does have preclusive effects regardless, moving forward but not retroactively, it's one that's very clearly a mistake of law. It strikes me as kind of a textbook misapplication of the Work Made for Hire, and a judge has already ruled that in the same southern district of Indiana prior to the dispute that we have. So there doesn't appear to be a genuine contention about ownership. And even the law firm that is alleged to own it under Work Made for Hire, in other cases said that's not their understanding of it. They don't believe in ownership. So if we were to search the copyright registrars for the name of the law firm, they would not come up as a registered copyright owner for this act? I do not believe so. I would have to go do that search for myself, but my understanding is no, that Mr. Bell has the copyright ownership. He took the photo, and the statute makes clear it attaches upon fixation. It would have to have been in the scope of employment, which I don't think is a reasonable argument to that effect. And the registration has his name and his name alone on it. Okay, where do you think the cases went wrong on de minimis infringement? The case below, Your Honor? No, I mean in the slide of authority. Oh, so I actually don't think there is a slide of authority in this circuit. I think this circuit's de minimis application is right on point. This court has said that its understanding of de minimis is as the opposite of substantial similarity. So it has never held that there is a… Let me tell you, I think I ultimately don't disagree with your broad proposition, but I do disagree with the notion that this court has said so, because this court has discussed the de minimis proposition only in the substantial similarity context, and it's arguably applicable in others. We just haven't talked about it in others. So when you have cases that say only if, that's because they're talking about the substantial similarity context. And it is a little peculiar because there is substantial similarity law, but yeah, we have adopted the de minimis language. It's just there. That would be an understandable interpretation of the case law prior to design data, but in design data, this court really clarified what that only if language means, because it cited Neal Villeneuve's treatise, it's a leading treatise, and said that the overwhelming thrust of authority upholds liability even when, quote, uses of minimal consequence. And so this court in design data clarified what that only if language means. It reaffirmed that not only is that the law of this circuit, it acknowledged that leading treatise authors said that is the law and understanding of other circuits, with the exception of the Second Circuit. Right. And I think the Second Circuit, I think, based this de minimis thing on a misinterpretation of Knickerbocker. If you go back and look, have you looked at that? Yes, Your Honor. And I think we might have briefed the misinterpretation. The case is an odd one to import a whole doctrine around anyway because it's very scant. But my understanding is that was really a failure to state a claim, as opposed to a genuine de minimis defense. Well, in Knickerbocker, the Second Circuit, although the district court went off on a different theory, the Second Circuit said there was no copy. Right. So there was not an issue of de minimis in Knickerbocker. And actually, that speaks to a point that I would like to speak to the concern that maybe there's a de minimis that goes beyond this. It really doesn't for the following reason. The statute actually defines what a consequential use is. So this court has already said they don't understand de minimis to mean that inconsequential uses or acts count as de minimis, that it only applies as a parlance or the opposite of substantial similarity. But Section 106 of the Copyright Act makes clear what uses that are actionable are. They provide exclusive rights. So because this is a violation of the display right as codified and as interpreted by case law, that is a consequential use in the realm of copyright. And so the Supreme Court, by analogy, in a case called Petrella, essentially saw a conflict between an equitable doctrine of lackeys and a codified statute of limitations and said that you cannot subvert the statute for concerns that are equitable in nature. So we would argue that even if one was tempted to buy this argument that, well, maybe the de minimis could be expanded to other rights under the bundle, it would be contrary to the statute. So it would be reversing this court's own interpretation of it consistently with the clarification in design data, but also it would have new problems. Let me go ahead and tell you I disagree with your understanding of design data. The discussion in design data starts with saying the evidence raises a factual question of whether the download was more than insignificant. It goes on to quote the language, but the main thrust there is a discussion which would be unnecessary completely if, in fact, your interpretation of the latter part of the paragraph was true. So I remain unpersuaded that design data or anything in our case law says that it can't apply outside the substantial similarity context. I just don't think we've spoken to the issue. I think if you look beyond the particular issue of de minimis, you'll see that it would be a clunky reading of it to do that. Even if you don't agree that design data precluded that interpretation of expanding de minimis to the other 106 rights, there wouldn't be much room in it looking at, for example, the server test where it's in perfect 10 where the court said, a computer owner that stores an image as electronic information and serves that electronic information directly to the user, physically sending the zeros and ones, is displaying the electronic information in violation of the copyright holder's exclusive display right. But Wilmot's not perfect 10 in the sense that perfect 10 is trying to get people to look at the images. We'll get to Wilmot's issues because Wilmot's got some problems here, too, and this may not be the greatest vehicle for any broad statement. But I'm still not sure that there isn't some point beyond which the court may say, look, these facts just don't justify taking our time and effort. And I don't want to wait until the end of the case to say you get $200 and no attorney's fees. That's an awfully expensive way for everybody to learn the lesson. So why can't the court find an exit ramp at the beginning? I understand. Certainly the court can do whatever it wants. I do think it would be a real problem. We wish. It would be a real problem for copyright law. And I also just want to very quickly speak to the volitional argument that's lurking back there because the sense that Wilmot is distinguishable for perfect 10 also doesn't play out for copyright doctrine. In Giga News, they talked about the volitional conduct requirement, which is kind of this lurking idea that you should either have some sort of knowledge or some sort of affirmative act. Volition simply stands for the unremarkable proposition that proximate cause historically underlies copyright infringement, no less than other torts. And elsewhere in Giga News it said the so-called volitional element of direct infringement is not a judicially created element of intent or knowledge. It is a basic requirement of causation. As the name suggests, direct liability must be premised on the conduct that can reasonably be described as a direct cause of the infringement. Putting the locus of liability on the person who has the server makes sense from a legal perspective even if it seems to not have a certain intuitive sense of volition in an affirmative act requirement or an intent or knowledge requirement. Copyright is a strict liability tort, and the display right exists for a reason. And whether or not someone intended to cause harm isn't really that relevant because once it's up on the Internet, the harm is being caused. The display is being broadcast worldwide, which also speaks to the problems with importing knickerbocker, which is a case about a copy collecting dust in a back room somewhere that actually probably didn't even state a claim under the Copyright Act to begin with. All right, Ken, so you're well, obviously we've taken you well over your time, so let's hear from Mr. Sepnick. Thank you, Your Honor. May it please the Court. I represent Wilmot Storage Services, defendant in the district court proceeding below. And we ask the Ninth Circuit to sustain the decision of the district court granting summary judgment on the de minimis defense and remanding the attorney's fees issues and that the district court be given further guidance on that issue only. With respect to the Davis and Carmen cases, Wilmot believes that the de minimis defense is a substantial defense and is a sufficient basis for the court to sustain the district court's holding there. We also believe that while the Carmen case could be used for issue preclusion, we are very concerned about the fact that there's a possibility that that case could be appealed, there could be a new trial, there could be a number of things that could happen that could somehow undo that to figure out what ultimately happens there. So we would request that the court not simply short circuit the discussion of the de minimis defense in getting to a decision in this case. One of the key factors that we consider is that there really hasn't been any publication of the image. There may be zeros and ones out there on the internet, but not zeros and ones that the public has the ability to access. So it's only Mr. Bell who has the ability to access those, and he has essentially been the one that apparently has found the image on Wilmot's server, but the public can't do that. So there really isn't the same situation that has occurred in so many of these other de minimis. So are you arguing that you're actually not infringing a right because you're actually not displaying the photograph? We are arguing that it does not display the photograph under section 106 of the Copyright Act because the public doesn't have access to it, simply within the terminology. The public does have access. It may not be easy access. It may not be access that anybody has actually taken advantage of, but do you dispute that the public does in fact have access? I think there's probably some nuance to that, and it goes back to the analogy. Do I have access to the location of a coin buried in the beach, 100 miles of beach? Yeah, I suppose I have access to it. As a practical matter, I don't. So there is no publication. That's a distinction that shouldn't be overlooked because the Copyright Act is a strict liability statute. I mean, it provides. There's a specific section that says, gee, the infringer wasn't aware and has no reason to believe. That doesn't change the fact that there's a violation, does it? I mean, there's statutory damages. And so in this case, I happen to think the absolute minimum statutory damages is the most that might be sensible. But there's a provision for statutory damages. So the fact that you didn't know, I'm not sure that's a free pass. I'm pretty persuaded it's not. Your Honor, I think it goes a little bit beyond simply the statutory damage availability for innocent infringement. This is not like what presumably are other cases that Mr. Bell has brought, where there's an actual image residing that the public can actually see on a web page if they do some searching. There is, as a practical matter, no way, at least no way presented to us, that somebody could actually find the image. And it is so much analogous to the situation in Knickerbocker where it simply existed in the factory. Well, the person in Knickerbocker, an outsider in Knickerbocker couldn't get to it without breaking into the factory. It doesn't require any breaking in here. It would require extraordinary knowledge where to find it. But it's there. I mean, my knowledge of the Internet is not enormous. But I didn't hear you dispute the proposition. Indeed, you seem to affirmatively acknowledge the proposition. If you have the specific URL or had at least the same exact photograph, it could be reached. I've got this motion for judicial notice and so forth. I don't want to get into now because it's too much of an unanswered question for me to figure out what it means. If the case does go back, it may wind up being dealt with there. But it seems that at some point, if it's available, then we have to recognize that as a possibility that's not quite the same as Knickerbocker. Your Honor, it would seem that one would have to have a combination, like a combination to a safe or something like that, to be able to find it. Because how else would the public be able to access and find the image? On all the other types of cases where infringement is found, you have companies or defendants which have in some way made access available, such as in the Arrow case. I take it you're not alleging that Mr. Bell put the image or the Xs and Os and so forth, the ones and zeros there. Somebody did. Now, the somebody apparently preceded Wilmot. But somebody put it there, and whoever put it there would presumably know how to find it if he or she wanted to as well. I'm not sure that that's the case, Your Honor. For example, if Google Image Search has the ability to... Let me go back. I'm not talking about a stranger. In this case, I'm saying, how did it get there in the first place? Oh, that's correct. We don't know exactly, but it appears to be it was on the server. Somebody put it there. Someone put it there. That's correct. That is correct, Your Honor. Yes. So we have at least one stranger to this transaction who would know how to get it, and presumably that person might let somebody else know. So I don't know that it's quite true that we could say that only Bell could do it because only Bell has the exact copy of the photograph. Whoever put it there presumably could do it. Whoever that person told presumably could do it. And for that matter, anybody else with a copy of Bell's photograph could presumably find it as well if they had reason to search. And I don't know that they have any reason why they would, but they could. They have the key if they had decided to use it. As a practical matter, that just doesn't seem to be realistic, Your Honor. Well, I'll go back to the person who put it there. And part of Wilmot's problem here, and I'm sympathetic, but only to a point. I mean, as I piece this together, it appears that Wilmot got this server as part of acquiring another line of business. Was it USA.com or org or something like that? And I don't know if the business has continued, but do you know how it is that Wilmot came to have a server that had this image within it? Your Honor, my understanding is that Wilmot had purchased a website from a third party. I think it was called VisitUSA.com or .org. And so that server, the files came with it. We don't know if that was how it got on there. We don't know. So Wilmot winds up acquiring this site, this business. The files are there. If somebody acquires another line of business, they sometimes acquire the liabilities that come with it. So is there a reason why Wilmot should be exempted from that? The reason it should be exempted is, again, that unlike a regular website where the public has access by doing a word search, for example, on Google or Bing, that was not possible here. So it would seem to take that out of the normal situation. And this is where de minimis seems to – the concept seems to come in. It is so remote that this is not something that the courts should concern itself with. We're not saying that every one of Bell's cases should be treated this way. But in this particular case, it would seem that we're in a situation that warrants the application of the de minimis doctrine. So the concerns of using de minimis – the Ninth Circuit has dealt with the de minimis concept in other types of cases. It dealt with the de minimis concept in upholding a minor variation in the – with the EPA. The – in Ober versus Whitman, 243-3-1190, where the de minimis concept was used to make minor variations in connection with the Clean Water Act. So, I mean, it's not something that is new to the Ninth Circuit. In the Newton versus Diamond case, a copyright case, dealing with the de minimis issue, that was a measurement issue relating to how much music was appropriated, a very small amount of music. And it seems like this is the same sort of situation in a little – in one sense, because we're talking about something very minimal, very minor, very trivial. A situation where, as a practical matter, you cannot gain access to the photograph. You have to either have the photograph with you, or it's so limited that it's just not going to be possible to have access to it. But I do understand the issue that you raise, Judge Flippen. But I – that's just a comment I wanted to make. The server test that has been discussed by Mr. Bell, Bell's counsel, that was discussed in the Perfect 10 case, that doesn't seem to be significant here. Because the server test is really – first, it's dealing with vicarious liability. It's also dealing with linking where there's an effort to try to provide infringing images to the public. That simply doesn't exist here. You simply have a dormant image, and the amount of concern here, certainly qualitatively, is essentially zero, or pretty close to zero. And so, unless the court has any other questions, we'll not rest here. All right. Thank you very much, counsel. Mr. Keenan, I'll give you a minute. Thank you, Your Honor. I would just say that Wilmot's position essentially requires overturning a whole body of case law from this circuit regarding De Minimis. It would run afoul of the thrust of authority on what De Minimis means in the copyright context, as noted by a leading expert. It would require overturning Degan News regarding the display right. Additionally, I understand the concerns, but I would just implore the court to think of the downstream consequences of not cleaning up this legal error. It affects many parties beyond the parties to this dispute. Thank you very much for your time. Thank you very much, counsel. Bell v. Wilmot Storage Services will be submitted, and this session of the court is adjourned for today. Thank you both for an excellent argument. Thank you, Your Honor. This court for this session stands adjourned.
judges: Wardlaw, Clifton, Choe-Groves